Estate of Canon : King, Appellant, vs. Canon, Administrator, Respondent.

*March 30—April 28, 1936.*

For the appellant there were briefs by *Thomas W. Calla-han* of Darlington, attorney, and *Fiedler, Boardman & Jones* of Mineral Point and *W. Wade Boardman* of Madison of counsel, and oral argument by *Mr. N. S. Boardman* and *Mr. Callahan.*

For the respondent there was a brief by *Conley & Conley* of Darlington, and oral argument by *E. F. Conley.*

MARTIN, J. The trial court found, among other facts, that "said Joseph A. Canon and Harriet Canon were married at Freeport, Illinois, on October 7, 1926, and lived and co-habited together as husband and wife at Darlington, Wisconsin, until her death on August 4, 1932." Further, that "she [Harriet] had been subject to epileptic attacks at long intervals prior to her marriage. That she and her husband knew of that fact before their marriage. That the epilepsy did not in any way affect her general mental condition. That her mind was normal and that she attended to her own business affairs as well as her duties as housewife. That she was not even remotely insane, feeble-minded or idiotic but her mental condition was that of the average person."

The court further found : "That they were married in conformity with the laws of Illinois and that both of the parties, although they were residents of Wisconsin, were innocent of any intent to evade the laws of Wisconsin by being married in Illinois. That no proof has been offered that the laws of Illinois prohibited the marriage of epileptic persons at the time of said marriage." Further, "that the legality of said marriage was not questioned in any way until the filing of said petition of the said Edward Leo King in this court, on March 13, 1935. That the probate court of La Fayette county, Wisconsin, has no power or jurisdiction to pass upon the validity of said marriage in this proceeding and the court further finds that as the marriage of the parties was not void *ab initio* but voidable only, the legality of the marriage of said Harriet Canon and said Joseph A. Canon could not and cannot be challenged after the death of said Harriet Canon."

It appears without dispute that the deceased had been subject to epileptic attacks commencing when she was about twelve years of age and continuing until the time of her death. Mr. Canon testified that the last attack occurred within six weeks or two months prior to her death. Deceased was about forty years of age at the time of the alleged marriage. There was no issue of the marriage. She left no property except that derived from the estate of her father. Respondent was appointed administrator of the estate shortly after Harriet's death.

If respondent was not the lawful husband of the deceased, he would not be an heir at law and would not be entitled to the administration of her estate. Is the marriage void? Sec. 245.03 (1), Stats. 1925, which was in effect at the time of the alleged marriage, provided :

"No marriage *shall* be contracted while either of the parties has a husband or wife living, nor between persons who are nearer of kin than second cousins, excepting that mar-

riage may be contracted between first cousins where the female has attained the age of fifty years. Relationship under this section shall be computed by the rule of the civil law, whether the parties to the marriage are of the half or of the whole blood. *No insane person, epileptic or idiot shall be capable of contracting marriage."*

Sec. 245.04 (1), Stats., at the time of the marriage, as now, provided:

"If any person residing and intending to continue to reside in this state who is disabled or prohibited from contracting marriage under the laws of this state shall go into another state or country and there contract a marriage prohibited and declared void by the laws of this state such marriage shall be null and void for all purposes in this state with the same effect as though such prohibited marriage had been entered into in this state."

The Illinois statute, ch. 89, ¶ 21, Cahill's Ill. R. S. 1925, provides:

"No marriage shall be contracted in this state by a party residing and intending to continue to reside in another state or jurisdiction if such marriage would be void if contracted in such other state or jurisdiction and every marriage celebrated in this state in violation of this provision *shall be null and void."*

Though no proof was offered as to the provisions of the Illinois statute, sec. 328.01, Wis. Stats., provides:

"The courts of this state *shall* take judicial notice of the statutes of the United States, and of all the states and territories thereof."

This statute, as originally enacted in 1921 (ch. 214, Laws of 1921), was known as sec. 2135*m* and then provided: "The courts of this state shall take judicial notice of the public laws of any state or territory of the United States." In 1927 this section was amended to cover the statutes of the United States.

The inclusion of an epileptic within the prohibition contained in sec. 245.03 (1) of the statutes was made by ch. 218, Laws of 1917. In 1927 the section was amended to include imbeciles and feeble-minded persons so that under the Wisconsin statute no insane, imbecile, feeble-minded, or epileptic person or idiot was capable of contracting marriage. For a period of ten years prior to 1917, as a part of the criminal law under ch. 351 (present numbering) of the statutes designated "Offenses Against Chastity, Morality and Decency," there had been the following penal provision known as sec. 4593*m*:

"(1) No man and woman, either of whom is insane, mentally imbecile, feeble-minded or epileptic, shall intermarry.

"(2) No person authorized to solemnize marriages shall unite in marriage any man and woman either of whom is insane, mentally imbecile, feeble-minded or epileptic, nor shall any person advise, aid, abet, cause or assist in procuring or countenancing any violation of this act."

Sec. 4593*n*, Stats., provided:

"Any sane person violating any of the provisions of this act shall, upon conviction, be deemed guilty of a misdemeanor and be punished by a fine of not less than fifty dollars nor more than one hundred fifty dollars, or by imprisonment in the county jail for not more than six months, or by both such fine and imprisonment."

The foregoing provisions of the criminal laws became secs. 351.44 and 351.45 under the renumbering. They were both repealed by sec. 42b, ch. 473, Laws of 1927. As bearing upon legislative intent, we deem it significant that the criminal provisions were not repealed until after such marriages had been prohibited in this state.

In *Lyannes v. Lyannes*, 171 Wis. 381, 177 N. W. 683, this court had occasion to consider the status of a foreign marriage prohibited by sec. 245.03, Stats. The court said:

"That section 2330*m* [245.04], so far as it relates to marriages solemnized without the state of Wisconsin, renders

null and void such pretended marriages only so far as · the parties thereto are disabled or prohibited from entering into marriage under any circumstances under the laws of Wisconsin and to such form of marriages as can receive no validity by reason of the consent of parents if the parties are minors, the issuing of a license, or the antenuptial physical examination or other statutory requirements. In other words, that such section makes null and void in this state only such foreign marriages as are prohibited by sec. 2330 [245.03]."

The decision in the court below went upon the theory that the marriage was voidable only, and therefore its validity could not be challenged after the death of Mrs. Canon. This court did say in *Estate of Jansa,* 169 Wis. 220, 171 N. W. 947:

"That it was not the understanding or intent of the legislature that a marriage made in violation of sec. 4593*m* should be considered void is further evidenced by the fact that sec. 2330 was amended in 1917 so as to make *an epileptic incapable of contracting marriage.* . . . While there is considerable force to the argument that under the laws of Wisconsin the same reasons do not exist for declaring a marriage voidable rather than void, inasmuch as issue born as a result of a marriage thereafter annulled is not bastardized, nevertheless we are of the opinion that a marriage with an epileptic *prior to the enactment of ch. 218, Laws 1917, was voidable and not void under the laws of this state."*

From what is said, the logical inference is that after the enactment of ch. 218, Laws of 1917, such marriage is void. In *Lyannes v. Lyannes, supra,* the court said:

"Between the absolutely void marriages and the voidable marriages, the distinction is often shadowy and the line hard to place. Both forms are intermingled in the provisions of sec. 2330 [now 245.03], *supra,* providing who shall not marry."

If no insane, imbecile, feeble-minded, or *epileptic person* or idiot shall be capable of contracting marriage, as the legislature of this state has provided, it logically follows that any

such marriage would be absolutely void. In *Lyannes v. Lyannes, supra,* at page 390, the court said:

"In the void marriage the relationship of the parties, so far as its being legal is concerned, is an absolute nullity from its very beginning and cannot be ratified. It may be questioned at any time during the life of both, and, with some statutory exceptions . . . after the death of either or both, and generally whether the question arises directly or collaterally. As between the two individuals concerned no rights spring therefrom, and, generally speaking, except as modified by positive legislation, it needs no adjudication by a court that it is void."

As indicating legislative intent, were such marriages to be considered voidable only since the enactment of ch. 218, Laws of 1917, the legislature doubtless would have provided a means whereby such marriages could be avoided. There is no provision in the statute.

Our conclusion is that the petitioner, appellant herein, is entitled to a judgment in the court below in accord with the demand of his petition. The judgment must be reversed.

*By the Court.*—Judgment reversed, and record remanded with directions to enter judgment in accordance with the prayer of the appellant's petition.